IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| PSC CUSTOM, LLC, d/b/a POLAR SERVICE CENTER,<br><br>　　Plaintiff/Counter-Defendant,<br><br>　v.<br><br>HANOVER AMERICAN INSURANCE COMPANY, SECTOR CORPORATION, and ST. JOHNS CORPORATION,<br><br>　　Defendants/Counterclaimants. | CV-20-132-BLG-SPW<br><br><br><br>ORDER |
| SECTOR CORPORATION,<br><br>　　Cross-Claimant,<br><br>　v.<br><br>HANOVER AMERICAN INSURANCE COMPANY,<br><br>　　Cross-Defendant. | |

Before the Court is Defendant/Cross-Defendant Hanover American Insurance Company's ("Hanover") Motion for Summary Judgment (Doc. 41), Plaintiff/Counter-Defendant PSC Custom, LLC's ("PSC") Motion for Summary Judgement (Doc. 45), and Defendants/Cross-Claimants Sector Corporation's and

1

St. Johns Corporation's ("Sector/St. Johns") Motion for Partial Summary Judgment on Crossclaims I & II (Doc. 48). All motions are deemed ripe and ready for adjudication.

## I.  RELEVANT BACKGROUND

PSC filed the present lawsuit against Hanover and Sector/St. Johns following Hanover's denial of PSC's insurance claim for a fire that destroyed a Tank Wash Center building ("TWC") constructed after the original insurance policy was purchased. Hanover denied the claim, asserting that the insurance policy only covered the building described in the Declarations pages and not the TWC.

Sector is a small property management company based in Portland, Oregon authorized to conduct business in Montana. Sector owns a roughly five-acre parcel of land at 1635 North Frontage Road in Billings, Montana (the "Premises") with a 27,525 square foot building containing office, warehouse and shop space. St. Johns is a related Portland-based corporation that procures and manages insurance policies on Sector's behalf for the Premises. PSC operates in the tank trailer and tank truck industry with commercial parts and repair facilities located throughout the country.

In 2013, PSC entered into an agreement with Sector to lease the Premises.

2

The lease required Sector, as landlord, to acquire fire and casualty insurance on the entirety of the Premises and any improvements built thereon. Sector was to be listed as primary on the insurance with PSC listed as an additional insured as tenant. At all relevant times, the lease remained in effect. Pursuant to the lease provisions, Sector purchased insurance policies from Hanover for commercial general liability on the Premises beginning in 2013 and continuing through 2019. Policy no. ZZ2 A102918 05 (the "Policy") was included in those purchases with an effective date of May 24, 2018, through May 24, 2019.

In 2014, PSC erected the TWC on the Premises, approximately 135 feet from the existing office building, consisting of a metal structure with concrete floors and commercial roll-up doors at each end. The 6,100 square foot structure was used by PSC as a truck wash and truck tank draining/cleaning facility.

On May 9, 2019, a fire and explosion occurred in the TWC resulting in the complete destruction of the structure and repair costs of $412,040.05. PSC and St. Johns submitted claims to Hanover for the loss of the structure, but Hanover denied both claims. Hanover asserted that because the Policy did not expressly list the TWC as a covered property on the Premises, it was not covered. The Policy's declaration page lists several properties owned by Sector with the Premises described as "Location 4." The declaration pages further state blanket building

3

coverage exists for "Location 4 – Building 1." Hanover argued that this description restricted coverage to the 27,525 square foot office/warehouse building located on the Premises and did not include the additional Tank Wash Center built after the first policy was purchased. Therefore, Hanover denied coverage. PSC filed the present action in Montana state court on July 21, 2020. The lawsuit was removed to this Court on August 24, 2020.

## II. LEGAL STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party and a dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the Court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson,* 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all

justifiable inferences in the non-moving party's favor. *Anderson,* 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.,* 504 F.3d 1017, 1020–21 (9th Cir. 2007).

The Court's jurisdiction over this action is based on diversity of citizenship. Therefore, the Court must apply the substantive law of Montana. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002). In Montana, "[t]he interpretation of an insurance contract is a question of law." *United Nat'l Inc. Co. v. St. Paul Fire & Marine Ins. Co.*, 214 P.3d 1260, 1265 (Mont. 2019). If the contract is clear and explicit, it must be enforced as written. *Id.* Courts analyzing insurance polices must interpret words with their ordinary meaning with any ambiguity strictly construed against the insurer and in favor of coverage. *United States Fire Ins. Co. v. Greater Missoula Family YMCA*, 454 F.Supp.3d 978, 981 (D. Mont. 2020) (citing *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 474 (Mont. 2005)). "Ambiguity exists, when taken as a whole, an insurance contract is reasonably subject to two different interpretations." *Id.*

### III. DISCUSSION

Hanover, PSC, and Sector/St. Johns each submitted a motion for summary judgment (partial summary judgment in the case of Sector/St. Johns). Hanover

5

argues that the Policy unambiguously does not provide coverage for the TWC loss to either Sector/St. Johns or PSC. PSC argues that the Policy unambiguously provides coverage for the TWC loss or, in the alternative, that the Policy is ambiguous and must be interpreted in favor of coverage. Sector/St. Johns asserts similar arguments as PSC that the Policy unambiguously provides coverage for the TWC or, in the alternative, is ambiguous and must be construed in favor of coverage.

### A. Whether the Policy Provides Coverage for the TWC

Hanover's fundamental argument is that the TWC is not covered because the structure is not listed in the Policy's Declarations. The Policy lists blanket building coverage for Location 4 as "Building 1." (Doc. 50-6 at 6). Hanover asserts that this description applies only to the 27,525 square foot office space/warehouse that existed on the Premises at the time insurance coverage was purchased. In Hanover's view, because coverage did not extend to the TWC which was built a year after coverage was obtained and allegedly without the knowledge of Hanover—Hanover concludes coverage was properly denied under the unambiguous terms of the Policy. Alternatively, Hanover argues that Sector/St. Johns did not have an insurable interest in the TWC because they did not construct or own the building and that coverage does not exist for PSC under the Building

and Personal Property Coverage Form because they are not a named insured.

PSC responds that the language of the Policy unambiguously includes coverage of the TWC because the Policy states it will cover loss or damage to "Covered Property at the premises described in the Declarations." (Doc. 46 at 17). PSC argues this language includes the entire 5-acre parcel of land described as Location 4, including any and all buildings on that land. PSC primarily relies on the Montana Supreme Court's holding in *Park Place Apartments, LLC v. Farmers Union Mut. Ins. Co.*, 247 P.3d 236 (Mont. 2010) for support. Alternatively, PSC asserts that if the Court determines the Policy language does not provide coverage for the TWC, the Court should find that the lack of a specific definition of "Building 1" in the Policy and the inclusion of additions, fixtures, and installed equipment under the definition of Covered Property creates an ambiguity that must be resolved in favor of coverage for the insured.

Sector/St. Johns join in PSC's argument that the Policy's language includes coverage for the TWC because the Policy describes its coverage of Location 4-Building 1 as blanket coverage and nothing in the Policy expressly limits this language. (Doc. 49 at 13). Sector/St. Johns also rely on *Park Place* for support of their position.

In *Park Place*, the Montana Supreme Court determined that an insurance

7

policy was ambiguous and ruled in favor of the insured that the policy covered damage to a carport despite the fact that the carport was not listed as covered property in the policy's declarations page. 247 P.3d at 406. William Hileman (a.k.a. PPA), purchased an apartment building complex and hired a third-party, Wilhelm, to obtain insurance for the property. 247 P.3d at 396. The apartment complex included the apartment building itself, a separate building for laundry and storage, and a detached carport. *Id.* Wilhelm successfully obtained an insurance policy from Farmers Mutual Insurance Co. (FUMIC) for the complex that specifically listed the apartment building and the laundry/storage building in the declarations page. The carport was not listed but both PPA and Wilhelm believed this listing unnecessary, and that coverage had been obtained for the entire complex. *Id.* The insurance policy included the following covered property definition: "Covered property includes Buildings as described under Paragraph a. below ... a. Buildings, meaning the buildings and structures at the premises described in the Declarations ...." *Id.*, 247 P.3d at 400.

Seven years after the insurance policy purchase, a heavy snow fall caused the carport to collapse resulting in damage to numerous vehicles. *Id.*, 247 P.3d at 397. PPA submitted a damage claim under the insurance policy but the claim was denied. *Id.* FUMIC informed PPA that the claim was denied because the carport

was not considered covered property. *Id.*, 247 P.3d at 398. Before the district court, FUMIC argued that because the carport was not listed in the policy's declarations page, the carport could not be considered covered property. *Id.* The district court agreed with that argument and ruled in the insurance company's favor. *Id.*

On appeal, the Montana Supreme Court reversed the district court's decision. The Court found the language in the policy to be at best ambiguous stating:

> Our initial inquiry concerns whether the carport is logically included in the definition of the insured premises. The definition of "covered property" in the Businessowners' Coverage Form includes "buildings, meaning the buildings and structures at the premises described in the Declarations...." The logic behind FUMIC's interpretation of this phrase does not stand up to scrutiny. FUMIC contends, in essence, that the phrase means that coverage is limited to the *buildings and structures described in the Declarations*, as opposed to buildings and structures *at the premises described in the Declarations*. FUMIC's interpretation skips over the words "at the premises" in the definition of covered property, and would render them meaningless. It is a basic rule of construction that we must, if at all possible, interpret a contract so as to give effect to every part of the contract. *Milltown Addition Homeowner's Ass'n v. Geery*, 2000 MT 341, ¶ 11, 303 Mont. 195, 15 P.3d 458 (citing § 1-4-101, MCA). FUMIC's interpretation requires that the words "described in the Declarations" refer only to the "buildings and structures," and not "the premises." PPA's interpretation of the phrase—that coverage extends to all buildings and structures which are at the premises described in the Declarations—strikes us as the more reasonable interpretation. If FUMIC's interpretation is correct, it is certainly not unambiguously so.

9

…

> While we need only conclude that the policy is ambiguous to decide the resolution of the present case, we note that the most reasonable interpretation, in our view, is that the portion of the policy attributable to the apartment building is meant to include the carport. Thus, the carport is "listed" on the Declarations page by virtue of the listing of the apartment building. As an initial matter, it is doubtful that a carport is considered a "building" at all. The Businessowners' coverage form states that "although the words 'building' and 'structure' are not defined in the coverage form, a structure may be thought of as property erected on and attached to land that is not walled and roofed and a building is generally thought of as a walled, roofed structure." The "insured premises" section of the Declarations page on which FUMIC places so much weight asks only for buildings, not structures, and thus the carport's omission from the section is not as important as it is in FUMIC's analysis. Furthermore, Wilhelm testified that attached structures such as the carport are often accounted for by simply stating the buildings to which they are attached on the Declarations page. While the carport here was not physically attached, it was located very close to the building and it seems logical that it was considered an add-on to the apartment building.

*Park Place Apts., L.L.C.*, 247 P.3d at 401, 403 (emphasis in original). Based on this review and supporting evidence such as the inclusion of the carport's value in the insurance appraisal, the parties' intent when purchasing insurance coverage, and FUMIC's internal guidelines requiring coverage on all buildings on a commercial property, the Montana Supreme Court held that the policy was ambiguous and interpreted the policy in favor of the insured. *Id.*, 247 P.3d at 406.

10

The insurance policy language at issue here does not contain the same ambiguities as those in *Park Place Apts.* The Court agrees with Hanover that *Park Place* is distinguishable. Hanover's Policy states: "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (Doc. 24-5 at 1). The Policy defines "Covered Property" as "Building, meaning *the building or structure* described in the Declarations, including: (1) Completed additions; (2) Fixtures, including outdoor fixtures; (3) Permanently installed: (a) Machinery; and (b) Equipment...." (*Id.*) (emphasis added). The Policy references coverage for only a single described building or structure at the covered property whereas the language in the *Park Place Apts.* policy provided coverage for multiple buildings and structures at the specific premises. 247 P.3d at 400 ("Covered property includes Buildings as described under Paragraph a. below ... a. Buildings, meaning the buildings and structures at the premises described in the Declarations...").

The Policy's Declarations describe the Property as "Location: 4 ... 1635 N Frontage Rd Billings MT 59101" and further clarify that "Insurance at the Described Premises applies only for the coverage shown below: Blanket Building For Premises ... Location 4 – Building 1." (Doc. 24-1 at 3, 6). At the time PSC purchased the Policy from Hanover, there was only one building on the premises at

11

1635 N Frontage Rd: the 27,525 square foot office space/warehouse. The Declarations do not specifically describe Building 1 as the office space/warehouse in the Policy. However, it is unreasonable to interpret the description as referencing anything other than the sole building located on the insured premises. Therefore, the Court finds that the Policy unambiguously provides coverage to the office space/warehouse building as the only building that could be associated with the "Building 1" description in the Declarations. The remaining question is whether the Policy expanded that coverage to include the later-built TWC.

As in *Park Place Apts.*, the Policy does provide coverage for more than just the described building, but that additional coverage does not extend to the TWC. Once again, the Policy provides coverage to the "Building, meaning the building or structure described in the Declarations, including: (1) Completed additions; (2) Fixtures, including outdoor fixtures; (3) Permanently installed: (a) Machinery; and (b) Equipment . . . ." (Doc. 24-5 at 1). Sector/St. Johns make the argument that the TWC qualifies as a fixture under Montana Code Annotated § 70-15-103. That statute provides the real property definition of a fixture as "[a] thing is deemed to be affixed to land when it is: (1) attached to it by roots, as in the case of trees, vines, or shrubs; (2) imbedded in it, as in the case of walls; (3) permanently resting upon it, as in the case of buildings; or (4) permanently attached to what is thus

12

permanent as by means of cement, plaster, nails, bolts, or screws."

Sector/St. Johns assert "the TWC is a type of building and/or fixture on the Premises, which qualifies it as 'Covered Property.' Moreover, the Policy expressly includes coverage for fixtures and outdoor fixtures. Under Montana law, the term 'fixture' has an established meaning that would plainly encompass the TWC." (Doc. 51 at 5-6). Despite this conclusory statement, Sector/St. Johns provide no legal support for their claim other than a general reference to the above statute. It is not the place of the Court to make a party's argument for them and the Court finds this bare assertion unpersuasive. The TWC was a 6,100 square foot full metal structure with commercial roll-up doors at each end, contained dangerous chemicals, and was used as a truck wash and truck tank cleaning facility. The building was not simply a piece of personal property affixed to the premises or attached to the office space/warehouse. To classify the TWC as a fixture connected with the existing warehouse for purposes of insurance coverage is a stretch too far.

Further, the Court finds that external evidence also does not support a reasonable inference that insurance coverage would extend to the TWC under the Policy. First, unlike in *Park Place Apts.*, the TWC did not exist at the time PSC purchased the Policy. Hanover initially issued the Policy in 2013 and it was renewed continually through at least 2019 with no material change in coverage. (Doc. 43 at

13

2). The TWC was constructed in 2014.

Second, also unlike in *Park Place Apts.*, no party has presented evidence that the value of the TWC was included in Hanover's appraisal of the Premises. In *Park Place Apts.*, the Montana Supreme Court noted that the original appraisal of the apartment building property was estimated at $750,000 and included $46,200 for the value of the carport. 247 P.3d at 242. The Montana Supreme Court found this consequential stating, "as the apartment building was insured for $750,000, an amount which included the full value of the carport, it stands to reason that the carport was covered in the $750,000 policy purchased by PPA." *Id.* Here, Hanover asserts that the value of the TWC, approximately $348,822.79 based on the repair costs requested by PSC (Doc. 4 at 3), was never included in the insurance appraisal of the Premises. (Doc. 42 at 9). No party has presented evidence to contradict this assertion.

Third, neither PSC or Sector/St. Johns notified Hanover of the TWC's construction or requested a change to the Policy to include coverage for the TWC. Hanover states: "Hanover employees did not say or allude that any building not listed on the Declarations page would be covered by the Policy . . . Rather, Hanover believed it was insuring a property that consisted of an office building and warehouse and shop space. At no time during the original assessment or subsequent renewals

was Hanover aware that a Tank Wash Center had been constructed on the Property." (Doc. 62 at 7). No party has submitted any evidence to contradict these statements.

This evidence further supports the Court's finding that the Policy is unambiguous and does not include a reasonable inference of coverage for the TWC. Therefore, the Court finds that the Policy does not provide coverage for the claimed losses of the TWC and grants Hanover's motion for summary judgment. The Court need not address Hanover's alternative arguments.

## IV. CONCLUSION

IT IS HEREBY ORDERED that Defendant Hanover American Insurance Co.'s Motion for Summary Judgement (Doc. 41) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff PSC Custom's Motion for Summary Judgment (Doc. 45) is DENIED.

IT IS FURTHER ORDERED that Defendant Sector Co. and St. Johns Corp.'s Motion for Partial Summary Judgment (Doc. 48) is DENIED.

The Clerk of Court is directed to notify the parties of the making of this Order and enter judgment in favor of Defendant Hanover American Insurance Co. on Counts I, II, and III.


DATED this 6th day of December, 2021.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge